UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

MCCULLOCH ORTHOPAEDIC SURGICAL
SERVICES, PLLC a/k/a DR. KENNETH E.
MCCULLOCH,

                        Plaintiff,

               -v-

AETNA US HEALTHCARE, d/b/a AETNA
HEALTH AND LIFE INSURANCE
COMPANY, AETNA HEALTH INC., AETNA
HEALTH INSURANCE COMPANY OF NEW
YORK, or AETNA LIFE INSURANCE
COMPANY,

                        Defendants.

------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 11, 2015

15-cv-2007 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

       On February 17, 2015, plaintiff McCulloch Orthopaedic Surgical Services, PLLC a/k/a Dr. Kenneth E. McCulloch ("plaintiff" or "McCulloch") brought this action against defendant Aetna Life Insurance Company ("defendant" or "Aetna") in New York Supreme Court. Plaintiff alleges that it is an out-of-network medical provider who performed surgery on a patient who is a beneficiary of an Aetna-administered health care plan. Plaintiff brings this action seeking reimbursement from Aetna for such medical services. Plaintiff has cast its claim as one for promissory estoppel.

       On March 17, 2015, Aetna timely removed this action to this Court on the ground that plaintiff's state-law claim is completely preempted by the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.  (ECF No. 1.)  On March 24, 2015, Aetna answered the Complaint.  (ECF No. 6.)  On April 2, 2015, plaintiff timely filed a motion to remand.  (ECF No. 9.)  As the Court finds that plaintiff's claim is properly one for coverage under an ERISA plan, that motion is DENIED.[1]  Plaintiff shall amend its complaint to assert ERISA cause(s) of action not later than **Monday, May 25, 2015**.

I.   FACTUAL BACKGROUND[2]

The following facts are drawn from the Amended Complaint, as well as other competent evidence before the Court, such as claim forms and plan documents.  See Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 331 (2d Cir. 2011) (it is proper for a district court "to look beyond the mere allegations of the complaint to the claims themselves (including supporting documentation) in conducting its analysis" on a motion to remand).

Plaintiff alleges that Aetna "provide[s] health insurance coverage . . . or administers health insurance programs . . . for a fee and pay[s] money to persons like Plaintiff who provide medical services to persons covered by such plans."  (Amended Verified Complaint ("Am. Compl.") ¶ 16 (emphasis added), ECF No. 10-1.)  Plaintiff alleges that it performed surgery on a patient ("Patient V.A.") who is "a

---

[1] Plaintiff's motion for an oral argument on the remand motion (ECF No. 26) is DENIED as moot.

[2] In its opening brief on this motion, plaintiff cites facts from an Amended Complaint, filed in state court on February 23, 2015.  (See Plaintiff's Memo of Law in Support of Motion to Remand ("Pl.'s Br.") at 2 n.1, ECF No. 11.)  Defendant asserts that the Amended Complaint was rejected by the New York Supreme Court and returned to plaintiff for correction.  (See Defendant's Brief in Opposition to Plaintiff's Motion to Remand ("Def.'s Br.") at 2 n.1, ECF No. 13.)  Defendant does not make any specific objection to the allegations in the Amended Complaint.  For purposes of this motion, the Court assumes that the Amended Complaint is the operative pleading.

plan participant or beneficiary of a health care plan administered by Defendant." (Id. ¶ 17; see also id. ¶¶ 6-7.) Patient V.A. submitted an insurance card to plaintiff that "had a number for Providers to call to determine coverage and other subjects." (Id. ¶ 4.) Plaintiff alleges that prior to providing any medical services, plaintiff's staff contacted Aetna and "was assured that the Patient was covered by a health care plan administered by Defendant, that such plan provided for payment to out-of-network physicians, that the plan covered the surgical procedures that Plaintiff would be providing for the Patient, and that Defendant would reimburse Plaintiff at 70% of usual and customary reasonable rates [("UCR")] for such procedures." (Id. ¶ 8; see also id. ¶ 18.) Plaintiff alleges that Aetna's "call representatives are trained to quote <u>the benefits</u> that might apply for proposed services." (Id. ¶ 10 (emphasis added)).

After providing medical services to Patient V.A., plaintiff submitted completed CMS 1500 claim forms to Aetna. (Attorney Certification of Neil V. Shah in Support of Defendant's Opposition to Plaintiff's Motion to Remand ("Shah Cert.") Ex. B, ECF No. 14; see also Shah Cert. Ex. C.) Both forms show that Patient V.A. assigned his or her claims to plaintiff by indicating "Yes" in the "Accept Assignment?" field in Box 27. (See id.) These forms further indicate in Box 13 that Patient V.A. authorized "payment of medical benefits to the undersigned physician or supplier for services described below." (See id.) Plaintiff billed Aetna a total of

$66,048 for the medical services; Aetna paid $15,267.51.[3] (Am. Compl. ¶ 13.) While Patient V.A.'s plan has an anti-assignment provision (see Shah Cert. Ex. A at 54), Aetna asserts that it remitted payment directly to plaintiff based on the CMS 1500 forms. (Defendant's Sur-Reply Brief in Further Opposition to Plaintiff's Motion to Remand at 3, ECF No. 25 ("Plaintiff's claim forms represent that Plaintiff has obtained an assignment from the patient entitling it to receive direct payment, and in reliance on these forms, it is undisputed that Aetna remitted payment to the Plaintiff.").) Plaintiff's promissory estoppel claim seeks $30,966.09—the difference between 70% of the billed charges and what Aetna paid. (Am. Compl. ¶ 13.)

II.   LEGAL STANDARDS

   A.   Removal Standard

Removal of an action filed in state court to federal court is proper in "any civil action . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A case removed from state court shall, however, be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the "well-pleaded complaint rule," federal subject matter jurisdiction generally exists "only when the plaintiff's well-pleaded complaint raises issues of

---

[3] While plaintiff's original complaint alleges that Aetna has refused payment altogether (Compl. ¶ 13, ECF No. 1), the Amended Complaint alleges that Aetna in fact paid $15,267.51 (Am. Compl. ¶ 13).

federal law," and not simply when federal preemption might be invoked as a defense to liability.  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) (citations omitted).  However, a "corollary of the well-pleaded complaint rule" provides that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  Id. at 63-64; see also Montefiore, 642 F.3d at 327 ("Complete preemption permits removal of a lawsuit to federal court based upon the concept that where there is complete preemption, only a federal claim exists.  Where Congress has clearly manifested an intent to make causes of action removable to federal court, the federal courts must honor that intent." (quoting In re WTC Disaster Site, 414 F.3d 352, 372-73 (2d Cir. 2005)) (internal quotation marks omitted)).

In resolving a motion to remand, the Court is not limited to the allegations in the pleadings and may also consider extrinsic evidence.  See Montefiore, 642 F.3d at 329, 331 (reviewing claim forms in connection with a remand motion, and concluding that "it was proper for the District Court to look beyond the mere allegations of the complaint to the claims themselves (including supporting documentation) in conducting its analysis," id. at 331).  When the removal of an action to federal court is challenged, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'"  R. G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979) (citations omitted), abrogated on other grounds by Hertz Corp. v. Friend, 559 U.S. 77 (2010); see also Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006).

"[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states," the Court must "resolve any doubts against removability." In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007) (alteration, citation, and internal quotation marks omitted).

    B.    The Davila Test

ERISA was enacted "to protect . . . participants in employee benefit plans and their beneficiaries" by establishing uniform regulations for such plans and "providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). "Among other things, ERISA creates a comprehensive civil enforcement scheme that completely preempts any state-law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy." Montefiore, 642 F.3d at 327 (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004)); see also Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 113 (2d Cir. 2008) ("The purpose of ERISA preemption is to ensure that all covered benefit plans will be governed by unified federal law . . . .").

The ERISA civil enforcement scheme is set forth in ERISA § 502(a), which provides, inter alia, that a plan participant or beneficiary may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In Davila, the Supreme Court established a two-part test to determine whether a claim falls "within the scope" of § 502(a)(1)(B). Davila, 542 U.S. at 210 (citation omitted). Specifically, claims are completely

6

preempted by ERISA if they are brought (1) by "an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions." Id. The Davila test is conjunctive—that is, a state-law claim is preempted only if both prongs of the test are satisfied. Montefiore, 642 F.3d at 328.

The Second Circuit applied the Davila test in Montefiore under factual circumstances very similar to those here. In Montefiore, a health care provider—Montefiore Medical Center—brought an action in state court against a union and the union's ERISA employee benefit plan, seeking payment for medical services provided to plan beneficiaries. Montefiore cast its claims as arising under state law. Montefiore asserted that prior to providing medical services to each beneficiary, it would call the plan and verify that the patient was eligible and that the anticipated services were covered. Montefiore, like McCulloch here, argued that ERISA did not completely preempt its state-law claims because these pre-approval telephone conversations gave rise to an independent duty under state law separate and apart from defendants' obligations under the plan.

The Second Circuit held that Montefiore's state-law claims were completely preempted by ERISA under the Davila test. As to the first prong, the Second Circuit held, first, that "Montefiore is a health care provider to whom beneficiaries of the Plan have assigned their claims, and therefore is the type of party that can bring a claim against the [plan] regarding benefits pursuant to § 502(a)(1)(B),"

7

Montefiore, 642 F.3d at 329, and, second, that Montefiore's actual claims "implicate coverage and benefits established by the terms of the ERISA benefit plan" and thus are "colorable claims for benefits pursuant to ERISA § 502(a)(1)(B)," id. at 330-32. As to the second prong, the Second Circuit held that the parties' pre-approval telephone conversations—whatever legal significance they may have—did not "create a sufficiently independent duty under Davila" because they were "inextricably intertwined with the interpretation of Plan coverage and benefits." Id. at 332 (emphasis in original).

III.   DISCUSSION

Defendant argues that plaintiff's promissory-estoppel claim is preempted by ERISA § 502(b)(1)(A) under the Davila test and the Second Circuit's decision in Montefiore.  Plaintiff argues that the Davila test is not satisfied because (a) plaintiff could not have brought an ERISA claim because the Aetna plan at issue bars benefits assignments to out-of-network providers, and (b) the Aetna staff member's representations on the telephone gave rise to a legal duty independent from Aetna's obligations under the patient's plan.  Under plaintiff's theory, every pre-approval telephone call to an insurance company that administers an ERISA plan would create an alternative, state-law remedy.  That is not the law in the Second Circuit.  This action is properly before this Court under Davila and the Second Circuit's decision in Montefiore.

The first Davila prong requires that plaintiff "at some point in time, could have brought [its] claim under ERISA § 502(a)(1)(B)." Davila, 542 U.S. at 210. The Second Circuit has disaggregated the first Davila prong as follows:

> First, we consider whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B); and second, we consider whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B).

Montefiore, 642 F.3d at 328 (citation omitted).

The first step is satisfied here: plaintiff is "the type of party that can bring a claim pursuant to § 502(a)(1)(B)" because Patient V.A. assigned his or her claim for Aetna benefits to plaintiff. While § 502(a) is generally "narrowly construed to permit only the enumerated parties to sue directly for relief," the Second Circuit has "'carved out a narrow exception to the ERISA standing requirements' to grant standing 'to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care.'" Montefiore, 642 F.3d at 329 (alteration and citations omitted). Here, the CMS 1500 claim forms that plaintiff submitted to Aetna indicate "Yes" in the "Accept Assignment?" field and further indicate that the patient has authorized "payment of medical benefits" to plaintiff. (See Shah Cert. Ex. B.) In Montefiore, the Second Circuit found that such evidence is sufficient to satisfy the first step of the first Davila prong:

> Here, each of the reimbursement forms that provide the basis for Montefiore's suit contain a "Y" for "yes" in the space certifying that the patient has assigned his claim to the hospital. Accordingly, . . . the first step of the first prong of the Davila test is satisfied: Montefiore is a health care provider to whom beneficiaries of the Plan have assigned their claims, and therefore is the type of party that can bring a claim against the Fund regarding benefits pursuant to § 502(a)(1)(B).

9

Montefiore, 642 F.3d at 329.[4]

Plaintiff argues that it never obtained a valid assignment because Patient V.A.'s Aetna plan has an anti-assignment provision barring all assignments to out-of-network providers.  However, there is no dispute that—as between plaintiff and Patient V.A.—there has been a contractual assignment of the right to receive payment under the plan.  Such a contractual assignment between doctor and patient is all that is required to render the doctor "the type of party that can bring a claim pursuant to § 502(a)(1)(B)" for purposes of complete preemption.  Whether the assignment is valid under the terms of the ERISA plan at issue is a question to be decided once an ERISA claim is before the Court.  In other words, it is entirely possible that plaintiff's state-law claims are completely preempted by ERISA yet its subsequently filed ERISA claims are dismissed for lack of standing.  See Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co., 919 F. Supp. 2d 345, 349, 350-57 (S.D.N.Y. 2013) (motions to remand denied under the complete preemption doctrine and some subsequently asserted ERISA claims dismissed for lack of standing due to anti-assignment provisions).[5]  However, as Aetna has specifically alleged that it

---

[4] Plaintiff argues—citing a decision from the Eastern District of Louisiana—that an "assignment of the right to receive payment directly from the insurer does not also constitute authorization to institute legal actions against the insurer."  (Memorandum of Law in Further Support of Plaintiff's Motion to Remand and in Reply to the Response filed April 20, 2015 by Defendant at 6, ECF No. 16.)  This argument is unavailing: under Montefiore, an assignment of the right to receive payment is sufficient to satisfy the first step of the first Davila prong.  See Montefiore, 642 F.3d at 329.

[5] In any event, here, Aetna in fact sent two payments (totaling $15,267.51) for Patient V.A.'s surgery directly to plaintiff despite the anti-assignment provision.  That is sufficient for purposes of the complete preemption analysis.  See Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of New York, Inc., No. 11 CIV. 8517 BSJ AJP, 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012) ("CIGNA's

remitted payment directly to plaintiff in reliance on the CMS 1500 forms, this should not be an issue before this Court.

The second step of the first Davila prong is also satisfied: plaintiff's promissory-estoppel claim "can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." In analyzing the second step, courts have distinguished "between claims involving the 'right to payment' and claims involving the 'amount of payment'—that is, on the one hand, claims that implicate coverage and benefits established by the terms of the ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments." Montefiore, 642 F.3d at 321. The former claims are claims for benefits that can be brought under § 502(a)(1)(B), while the latter are generally construed as independent contractual obligations between the provider and the benefit plan. Id. Here, plaintiff's claim is a "right to payment" claim—a claim that implicates coverage determinations under the terms and conditions of Patient V.A.'s plan. Indeed, when plaintiff telephoned Aetna to ascertain coverage, it received no more

---

long-standing pattern and practice of direct payment to Neuroaxis is sufficient to show its consent to Neuroaxis' assignments," assignment-restricting plan language notwithstanding (citations omitted)).

Plaintiff disagrees with Aetna's assertion that it remitted these payments directly to plaintiff in reliance on the CMS 1500 forms—and alleges that "Aetna's forms show that Aetna paid Plaintiff directly . . . because it was paying pursuant to the Beech Street Plan." (Plaintiff's May 7, 2015 Ltr. at 2, ECF No. 26.) Plaintiff cites a letter from Aetna stating that "[t]he claim . . . was correctly paid at the out-of-network benefits level, using the Beech Street contracted rates for the National Advantage Plan." (Id. (quoting ECF No. 17-4).) The Court need not understand the details of these rates—or what "Beech Street" refers to—for purposes of this motion. There is no dispute that (a) Patient V.A.'s Aetna plan has an anti-assignment provision, (b) plaintiff submitted forms to Aetna indicating that it has received an assignment from Patient V.A., and (c) Aetna paid $15,267.51 directly to plaintiff for procedures performed on Patient V.A. (and not some other patient) despite the anti-assignment provision. (See Am. Compl. ¶ 13(c) ("Defendant paid $842.51 for the service on August 4, 2011 and it paid $14,425 for the service on March 15, 2012." (emphases added))). That is sufficient. Put another way, which ERISA plan governs plaintiff's claim is irrelevant to this motion.

than a summary of the terms of the plan as it applies to out-of-network providers; it was told (1) "that the Patient was covered by a health care plan administered" by Aetna, (2) "that such plan provided for payment to out-of-network physicians" like plaintiff, (3) "that the plan covered the surgical procedures that Plaintiff would be providing," and (4) "that Defendant would reimburse Plaintiff at 70% of usual and customary reasonable rates for such procedures." (Am. Compl. ¶ 8.) All of these representations relate to plan coverage—they are by no means a separate promise. Whether the particular procedures that plaintiff performed on Patient V.A., as well as other miscellaneous charges, are in fact covered in whole or in part under Patient V.A.'s plan—and what are the "usual and customary reasonable rates" for such procedures as those terms are defined in the plan—are questions which must be litigated under the coverage provisions of the plan and pursuant to ERISA § 502(a)(1)(B).

      Finally, the second prong of Davila is satisfied here as well: no "other independent legal duty" is implicated. "The key words here are 'other' and 'independent.'" Montefiore, 642 F.3d at 332. Here, defendant's only duty arises out of the terms and conditions of Patient V.A.'s plan. Plaintiff's argument that an "independent" duty arose from plaintiff's telephone conversation with Aetna—during which an Aetna representative summarized the terms of Patient V.A.'s plan—is squarely foreclosed by Montefiore. The Second Circuit clearly held that pre-approval telephone conversations—whatever legal significance they may have—do not "create a sufficiently independent duty under Davila" because they are

12

"inextricably intertwined with the interpretation of Plan coverage and benefits." Id. (emphasis in original).[6]

IV.  CONCLUSION

For the reasons set forth above, plaintiff's remand motion is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 9.

SO ORDERED.

Dated:   New York, New York
         May 11, 2015

_____
KATHERINE B. FORREST
United States District Judge

---

[6] Plaintiff's reliance on the Ninth Circuit's decision in Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941 (9th Cir. 2009), is misplaced. Although the Second Circuit in Montefiore expressly acknowledged the decision in Marin, see Montefiore, 642 F.3d at 328, it nevertheless held that verbal communications regarding the terms of a member's benefit plan did not create a sufficiently independent legal duty under Davila. Montefiore is binding on this Court.

Plaintiff's reliance on Wurtz v. Rawlings Co., 761 F.3d 232 (2d Cir. 2014), is similarly unavailing. The facts in Wurtz are entirely different from those in Montefiore and here: the question in Wurtz was whether a claim under New York's Anti-Subrogation Statute imposed an independent legal duty on the defendants not to seek reimbursement of medical expenses from plaintiffs' tort settlements. The Second Circuit held that the claim was not completely preempted, while repeatedly citing its decision in Montefiore. Nothing in Wurtz negates or undercuts Montefiore.

13